INTERNATIONAL LONGSHOREMEN'S & WAREHOUSEMEN'S UNION, LOCAL 6, C. I. O. v. SUNSET LINE & TWINE CO. et al.

No. 27899.

District Court, N. D. California, S. D.

April 7, 1948.

120

Bronson, Bronson & McKinnon, of San Francisco, Cal., for defendant Sunset Line & Twine Co., a corporation.

Gladstein, Andersen, Resner & Sawyer and Norman Leonard, all of San Francisco, Cal., for plaintiff International Longshore-men's and Warehousemen's Union, Local 6, C.I.O.

Theodore Haugh, of Tulsa, Okla., for defendants California Ass'n of Employers and Winston M. Caldwell.

Louis Penfield, Chief Legal Officer, of Cincinnati, Ohio, for National Labor Relations Board.

HARRIS, District Judge.

This action, instituted in the United States District Court as between private parties, seeks injunctive relief and damages on behalf of a labor union, representing its membership, against the employer and other, named individuals. This is the substance of the complaint:

For approximately ten years plaintiff served as collective bargaining agent for the employees of defendant Sunset Line & Twine Co. In 1947, when plaintiff sought to renew its collective bargaining agreement with defendant, defendant refused to bargain collectively with plaintiff and refused to recognize plaintiff as the designated bargaining agency of its employees in violation of the provisions of the Labor Management Act of 1947, 29 U. S.C.A. § 141 et seq. Defendant Sunset Line & Twine Co., together with other defendants sued in this action, allegedly conspired to violate the law by refusing to bargain, by importing strike breakers, by intimidating pickets, and by refusing to present their side of the dispute to the conciliation service when requested to do so by plaintiff. These refusals have continued, according to the complaint.

Defendants have filed motions to dismiss; for the purposes of the motions the complaint may be regarded as true. In addition, the National Labor Relations Board sought and was allowed intervention solely with respect to the claim and contention that this court is without jurisdiction. The several motions are substantially identical in their charging features:

(1) This court is without jurisdiction of the subject matter of the complaint,—

(a) The National Labor Relations Board is exclusive agent under the Labor Management Act to petition the District Court for injunctive relief;

(b) The District Court is not granted jurisdiction to issue injunctions or damages on behalf of private parties in such cases;

(c) Plaintiff has an adequate and exclusive remedy under the provisions of the Labor Management Act;

(d) Plaintiff has failed to comply with the provisions of Section 9 of the Labor Management Act;

(e) Plaintiff has not exhausted its remedies under the Labor Management Act;

(f) Plaintiff has failed to make every reasonable effort to settle the alleged dispute.

Upon the filing of the complaint an order to show cause why injunctive relief should not be granted was duly issued, and in response thereto the defendants set forth their position:

In addition to denying the allegations in the complaint setting forth violations of the Labor Management Act of 1947 defendants have alleged in their return that they bargained in good faith with plaintiff over an extended period of time and remain willing to do so; that negotiations were terminated because plaintiff refused to comply with the requirements of the Labor Management Act of 1947, and further, committed acts of violence against employees of defendant Sunset Line & Twine Co. The return further shows that defendants have made work available to plaintiff at any time that its members should wish to return to their positions of employment.

Plaintiff concedes: That prior to the amendments as embraced in the Labor Management Relations Act, 1947, hereinafter referred to as the "Act," June 23, 1947, Ch. 120, Pub. 101, 61 Stat. 136, 29 U.S.C.A. § 141 et seq., plaintiff would necessarily have to seek redress before the National Labor Relations Board.

In this instance, however, it is sought to by-pass the Board and it is urged that this court assume jurisdiction upon the following grounds:

(a) That the Act does not provide for exclusive jurisdiction in the Board;

(b) That concurrent jurisdiction may be found in the Act, at least by implication;

(c) That as a matter of general policy this court should seize jurisdiction, for, as it is asserted, otherwise plaintiff will be deprived of any remedy for the alleged wrongs committed by the employer.

Arguments upon which these several propositions are grounded have been examined. They are not persuasive.

Prior to its amendment, the National Labor Relations Act conferred no private rights enforceable at the suit of private parties. Rather, it conferred solely public rights enforceable exclusively by the Board. Unless the Act, i. e., the so-called "Taft-Hartley" law, has broadened the scope of jurisdiction, it is manifest that this court is without power to entertain the suit. Two sections, 301 and 303, of the Act permit suits by private litigants in the United States District Courts. Section 301 * *[1] deals generally with a breach of contract; Section 303 * * *[2] proscribes against secondary boycotts. Neither section is applicable to the facts herein.

---

[1] "Sec. 301. (a) Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Act, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties. * * *"

[2] "Sec. 303. (a) It shall be unlawful, for the purposes of this section only, in an industry or activity affecting commerce, for any labor organization to engage in, or to induce or encourage the employees of any employer to engage in, a strike or a concerted refusal in the course of their employment to use, manufacture, process, transport, or otherwise handle or work on any, goods, articles, materials, or commodities or to perform any services, where an object thereof is— * * *

"(b) Whoever shall be injured in his business or property by reason [of] any violation of subsection (a) of this section may sue therefor in any district court of the United States subject to the limitations and provisions of section 301 hereof without respect to the amount in controversy, or in any other court having jurisdiction of the parties, and shall recover the damages by him sustained and the cost of the suit."

■ The legislative history of the Act demonstrates that Congress did not intend to enlarge the rights of private litigants. Although jurisdictional strikes and secondary boycotts were made independently unlawful in Section 303 of the Act, and persons injured thereby were accorded a right to sue for damages in the district courts; nevertheless, it is clear that Congress did not intend, either by expression or by necessary implication, that private parties should have a right to injunctive relief even as an ancillary remedy in the permitted suit for damages.

The design and pattern of the Act make it clear that the specific injunctive processes expressly conferred upon the district courts by Section 10(*l*) * * *[3], only become operable upon a petition filed on behalf of or through the administrative agency and not by a private party.[4]

■ It is equally clear that the Board has exclusive power to determine whether unfair labor practices have been committed and to issue appropriate orders upon such determination.[5]

Plaintiff would have this court discover jurisdiction by implication. The complaint sets forth no particular section of the Act upon which reliance is placed. It is broadly alleged that plaintiff is engaged in interstate commerce and that unfair labor practices have been perpetrated by defendants.

■ Matters of general policy and expediency were considered by Congress after lengthy, intense debate upon the subject of the Act. For this court to translate "general policy" and "expediency" in order to fit the particular requirements of plaintiff herein necessarily would require judicial legislation.[6] Plaintiff has referred the court to several cases wherein it appears that by reason of the circumstances present, trial courts assumed jurisdiction based solely upon grounds of expediency and further assumed to write into the Act rights

---

[3] "Sec. 10 (*l*) Whenever it is charged that any person has engaged in an unfair labor practice within the meaning of paragraph (4) (A), (B), or (C) of section 8(b), the preliminary investigation of such charge shall be made forthwith and given priority over all other cases except cases of like character in the office where it is filed or to which it is referred. If, after such investigation, the officer or regional attorney to whom the matter may be referred has reasonable cause to believe such charge is true and that a complaint should issue, he shall, on behalf of the Board, petition any district court of the United States (including the District Court of the United States for the District of Columbia), within any district where the unfair labor practice in question has occurred, is alleged to have occurred, or wherein such person resides or transacts business, for appropriate injunctive relief pending the final adjudication of the Board with respect to such matter. Upon the filing of any such petition the district court shall have jurisdiction to grant such injunctive relief or temporary restraining order as it deems just and proper, notwithstanding any other provision of law: Provided further, That no temporary restraining order shall be issued without notice unless a petition alleges that substantial and irreparable injury to the charging party will be unavoidable and such temporary restraining order shall

be effective for no longer than five days and will become void at the expiration of such period. Upon filing of any such petition the courts shall cause notice thereof to be served upon any person involved in the charge and such person, including the charging party, shall be given an opportunity to appear by counsel and present any relevant testimony: Provided, further, That for the purposes of this subsection district courts shall be deemed to have jurisdiction of a labor organization (1) in the district in which such organization maintains its principal office, or (2) in any district in which its duly authorized officers or agents are engaged in promoting or protecting the interests of employee members. The service of legal process upon such officer or agent shall constitute service upon the labor organization and make such organization a party to the suit. In situations where such relief is appropriate the procedure specified herein shall apply to charges with respect to section 8(b) (4) (D)."

[4] Lebaron v. Printing Specialties and Paper Con. Union, D.C., 75 F.Supp. 678.

[5] Douds v. Local 294, etc., D.C., 75 F. Supp. 414, 417.

[6] Bakery Sales Drivers Local Union No. 33. v. Wagshal, App.D.C., 161 F.2d 380, 383; See opinion of Mr. Justice Frankfurter, Bakery Sales Drivers Local Union No. 33 v. Wagshal, 68 S.Ct. 630.

and remedies not provided for, solely on broad equitable grounds.[7]

In Styles v. Local 74, etc., D.C., 74 F. Supp. 499, 501, the court, in discussing the problem of jurisdiction, said in part:

"This tribunal has no jurisdiction to settle the controversy between the contesting parties. The Congress has seen fit to place jurisdiction with the National Labor Relations Board and thereafter by adequate procedural provisions in the Circuit Court of Appeals and the Supreme Court. The only jurisdiction in this court is for injunctive relief pending the hearing and decision by the National Labor Relations Board."

Plaintiff places heavy reliance upon Texas & N. O. R. Co. v. Brotherhood of Ry. & S. S. Clerks, 281 U.S. 548, 50 S.Ct. 427, 74 L.Ed. 1034. The controversy arose under the Railway Labor Act, 45 U.S.C.A. § 151 et seq., and is without controlling effect. The pattern of the legislation under consideration in the case at bar provides for the preservation of rights and sets up adequate machinery within the jurisdiction of the National Labor Relations Board to enforce and preserve the rights.

In finality, plaintiff asserts that perforce this court has concurrent jurisdiction as a matter of general policy for the reason and upon the ground that during the course of the legislative debates in Congress "most of the organized labor movement, including its chief spokesmen such as the executive officers of the American Federation of Labor and the Congress of Industrial Organizations among others, announced publicly and before various Senate and House Committees that they did not propose to file the affidavits and documents required * * * ." As a condition precedent to obtaining the benefits of the Act, it is required that the plaintiff file an affidavit and provide additional information.[8] Plaintiff, continuing, asserts: "It must have been the intent of Congress that if the labor organization chose not to avail itself of the facilities of the National Labor Relations Board because it preferred not to file the affidavits and documents required, then another forum should be provided where the employer's unfair labor practices could be subject to scrutiny and restraint."

This latter contention on the part of plaintiff has some degree of novelty, but cannot be accepted as a canon of interpretation or construction, either with respect to the intent of the legislators or as to the wisdom or purposes of the Act.[9]

It is manifest that plaintiff has not seen fit to invoke the jurisdiction of the National Labor Relations Board in the manner clearly provided for. This suit represents a circuitous method or means of avoiding or attempting to avoid the clear mandate of the statute. To say that the United States District Courts, under such circumstances, have concurrent jurisdiction is to create therein a forum for every conceivable labor-management grievance which properly reposes within the confines, province and exclusive jurisdiction of the Board.

Accordingly, the motion to dismiss is granted and the order to show cause discharged.

---

[7] Dixie Motor Coach Corporation v. Amalgamated Association of Street Ry. Employees, etc., D.C.Ark.1947, 74 F. Supp. 952. Textile Workers Union of America v. Amazon Cotton Mill Co., D.C. N.C.1947, 76 F.Supp. 159.

[8] Labor Management Relations Act, June 23, 1947, Ch. 120, Pub. 101, Sec. 9(h): "No investigation shall be made by the Board of any question affecting commerce concerning the representation of employees, raised by a labor organization under subsection (c) of this section, no petition under subsection (e) (1) of this section shall be entertained, and no complaint shall be issued pursuant to a charge made by a labor organization under subsection (b) of section 10, unless there is on file with the Board an affidavit executed contemporaneously or within the preceding twelve-month period by each officer of such labor organization and the officers of any national or international labor organization of which it is an affiliate or constituent unit that he is not a member of the Communist Party or affiliated with such party, and that he does not believe in, and is not a member of or supports any organization that believes in or teaches, the overthrow of the United States Government by force or by any illegal or unconstitutional methods. The provisions of section 35A of the Criminal Code shall be applicable in respect to such affidavits."

[9] Cf. Gerry of California, Bureau of National Affairs Daily Report, Jan. 19, 1948, No. 12.