HAT CORP. OF AMERICA v. UNITED HATTERS, CAP AND MILLINERY WORKERS INTERNATIONAL UNION et al.

Civ. A. No. 4554.

United States District Court
D. Connecticut.

Sept. 4, 1953.

Pullman, Comley, Bradley & Reeves, Bridgeport, Conn., Walter Gordon Merritt and Constantine P. Lambos, New York City, for plaintiff.

Katz & Jaffe, New York City, Norman Zolot, Bridgeport, Conn., for defendants.

HINCKS, Chief Judge.

This is a suit in equity brought originally to the Superior Court for Fairfield County, State of Connecticut, praying for an injunction to enjoin the defendants, all of whom are labor unions and officers thereof, from maintaining and aiding in a strike, from picketing, and from inducing common carriers and truckmen and their employees to refuse to serve the plaintiff. The complaint also prays "damages in such amount as may be assessed by the court."

The suit was removed to this court and the plaintiff has filed a motion to remand which is now before the court for decision.

The removal was accomplished and a remand is presently resisted upon the defendants' assertion that the suit is a "civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States" within the meaning of the Removal Act, 28 U.S.C.A. § 1441(b). Whether this is so is the determinative question the answer of which must depend upon the content of the complaint.

■ Broadly stated it is the plaintiff's contention that this suit is not such an action but is rather a suit seeking equitable protection from a common law conspiracy and for the recovery of incidental damages resulting therefrom and accruing to date of trial,—in short a suit such as, irrespective of any federal right, is cognizable by the State Court. Since the burden is on the defendants who removed the case to sustain their contention that the suit is one arising under federal law, I will turn directly to a consideration of the particular grounds on which they seek to base their contentions.

■ First, they contend that the suit is founded on a right arising under the federal Anti-Trust laws. This contention is based upon Par. 31 of the complaint which alleges that the so-called nondiversion clause in the labor contract proposed by the defendants, if accepted by the plaintiff and incorporated into an operative contract, "would constitute a violation of the laws of the United States prohibiting restraints of trade and monopolies, etc." But Paragraph 31 must of course be read in its context and looking to the context, we see that Par. 26 alleges a common law conspiracy on the part of the defendants to obstruct and injure the plaintiff's business by coercing the plaintiff to enter into a union contract containing the nondiversion clause and that Paragraphs 28 to 35 are descriptive only of the nature, scope and effect that such a clause, if included in an accomplished labor contract, would have. The complaint does not allege that a contract containing such a clause has been entered into: it does not allege any accomplished violation of the

Anti-Trust laws. On the contrary, it is perfectly plain that the complaint is brought only to enjoin a conspiracy in violation of state law which by way of description is stated by succeeding paragraphs to have various incidental illegal objectives. I hold that the complaint here is not one "founded on a claim or right arising under * * *" the Anti-Trust laws of the United States. Gully v. First National Bank, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70. Here, as in American Well Works Co. v. Layne & Bowler Co., 241 U.S. 257, 36 S.Ct. 585, 60 L.Ed. 987, the references in the complaint to the Anti-Trust laws of the United States are only incidental to a common law tort on which its suit is based, and hence does not arise under federal law.

Rambusch Decorating Co. v. Brotherhood of Painters, Decorators and Paperhangers of America, 2 Cir., 105 F.2d 134, does not support the defendants' position on this point. For quite apart from the fact that that was not a removal case and did not directly involve a construction of the Removal Act, the Rambusch opinion sustained the presence of federal jurisdiction because the complaint directly sought to invalidate an existing (not a proposed) contract on the sole ground that it contravened the Anti-Trust laws. The action there was thus founded upon an alleged contract right the legality of which was wholly dependent upon federal laws. That is not the situation here where the complaint asserts a right to protection from a common law conspiracy cognizable by the law of the State.

█ The defendants' assertion that suits founded on the Anti-Trust laws are removable and that the coexistence of a non-federal claim cannot defeat removal is completely irrelevant to this situation here. For beyond dispute where there is a claim which may be founded either on one law or another the choice is one for the plaintiff. The Fair v. Kohler Die and Specialty Co., 228 U.S. 22, 33 S.Ct. 410, 57 L.Ed. 716. And here, even if we assume that the plaintiff might have chosen to invoke a right arising under federal law as the foundation of a claim, the complaint shows plainly that he chose rather to found his claim on the law of the State.

Next, the defendants contend that the complaint asserts claims and rights arising under Section 303 of the National Labor Management Relations Act, 29 U.S.C.A. § 187, which confers upon the district courts of the United States and State courts jurisdiction to entertain actions for the violation of said Section 303. For this contention the defendants rely particularly on Pars. 26 and 36 of the complaint. But neither in these paragraphs nor elsewhere does the complaint allege facts to bring the case within said Section 303. Par. 26 alleges merely a common law conspiracy comprising the defendant unions and "other unions and persons who and which are not members of the same industry, trade, craft, or occupation to obstruct, injure and destroy plaintiff's business." And Paragraph 36 merely enumerates the means alleged to have been used to effectuate the conspiracy; including, as one such means, the allegation, subparagraph (f), that the defendants "have induced, coerced and intimidated common carriers to refuse to * * * serve the plaintiff" and, as another such means, an allegation, subparagraph (h), that the defendants by disorderly conduct, etc., have prevented employees and others from entering the plaintiff's premises for the purpose of performing services for the plaintiff. These are allegations of involuntary action: they do not charge *concerted action* on the part of the common carriers or their employees such as would be necessary to bring the case within the purview of the Labor Management Relations Act, Section 187(a). I hold that the complaint does not assert a claim arising under Section 303 of that Act, and the cases cited by the defendants do not constitute authority for misinterpreting the complaint.

The defendants further contend that the complaint here alleges an unfair labor practice as defined in 29 U.S.C.A. § 158 and thus asserts a right arising under the National Labor Management Relations Act, 29 U.S.C.A. § 141 et seq. But plainly, this action, even if—contrary to my view—it were founded on such a right, is not one brought under sections 10(j) or 10(*l*) of the National Labor Relations Act as amended by Section 101 of the Labor

Management Relations Act, 29 U.S.C.A. § 160(j) and (*l*) or under Section 208 of the Labor Management Relations Act, 29 U.S.C.A. § 178. The defendants do not so contend. And no other provisions of that Act, except Section 303, 29 U.S.C.A. § 187, which I have just held to be inapplicable here, purports to confer jurisdiction on the court. No such grant of jurisdiction is to be inferred. It follows that even if, contrary to my holding, the complaint asserted a right resulting from an unfair labor practice or even a right to protection from coercion to commit an unfair labor practice, this court would not have original jurisdiction within the meaning of the Removal Act.

On this point I accept Amazon Cotton Mill Co. v. Textile Workers Union of America, 4 Cir., 167 F.2d 183, as authoritative. It has been followed and is supported by the great weight of federal decisions. See also Home Building Corp. v. Carpenters Dist. Council, D.C., 53 F.Supp. 804; Cal. Ass'n of Employers v. Building, etc., Council, 9 Cir., 178 F.2d 175; Berrios v. Bull Insular Line, Inc., D.C., 109 F.Supp. 858; Dynamic Mfrs., Inc. v. Local 614, etc., D.C., 103 F.Supp. 851; Rock Hill Printing & Finishing Co. v. Berthiaume, D.C., 97 F.Supp. 451; H. N. Thayer Co. v. Binnall, D.C., 82 F.Supp. 566; Walker v. United Mine Workers of America, D.C., 105 F.Supp. 608; Castle & Cooke Terminals v. Local 137, etc., D.C., 110 F.Supp. 247; American Optical Co. v. Andert, D.C., 108 F.Supp. 252; Associated Telephone Co. v. Communication Workers, D.C., 114 F.Supp. 334.

In opposition to this substantial line of authority, the defendants cite only Direct Transit Lines v. Local Union 406, 6 Cir., 199 F.2d 89; Capital Service, Inc. v. National Labor Relations Board, 9 Cir., 204 F.2d 848; and Pocahontas Terminal Corp. v. Portland, etc., Council, D.C., 93 F.Supp. 217.

The Direct Transit Lines case was decided by a Per Curiam decision which showed that the court's attention was principally focused on the propriety of remedy by mandamus. In its single brief paragraph which supports the defendants' position, it refers to the definition of unfair practices as now stated in the Labor Management Relations Act. So far as appears, its attention had not been called to the fact that nothing in the Act conferred upon the courts jurisdiction to enforce prevention of unfair labor practices on the complaint of a private litigant, nor indeed to the impact of the Norris-LaGuardia Act upon the claim of jurisdiction in the court below. No reference was made to Judge Parker's thoroughly considered opinion in the Amazon case, or to the line of authorities cited above which followed it.

The Capital Service case is not in point. That was not a case brought to the federal district court by removal. It was an original action brought on the complaint of the National Labor Relations Board. The jurisdiction of the federal district court was not discussed, but its presence obviously derived from Section 10(*l*) of the National Labor Relations Act now stated in 29 U.S.C.A. § 160 (Par. *l*) which limited the jurisdiction to complaints brought by the Board for temporary relief. The grant obviously did not extend to cases brought not by the Labor Board but by a private litigant as is the case here. The Capital Service case, therefore, wholly fails to support the defendants' position.

The Pocahontas case, I agree, squarely supports the defendants' position. But that decision, in my view, must yield to the superior authority and reasoning of the Amazon case. There is, I think, a non sequitur in the Pocahontas opinion in that it concludes, erroneously in my view, that the action, which was brought by a private litigant, was one *founded* on a right arising under the Labor Management Relations Act, and that the district court had jurisdiction although jurisdiction in the court was withheld by that Act and expressly denied by the Norris-LaGuardia Act. To hold that the general grant of jurisdiction in 28 U.S.C.A. § 1337, which traces back to 1911, 36 Stat. 1092, confers jurisdiction in a case such as this seems to me to ignore the jurisdictional limitations thereafter enacted in the Norris-LaGuardia and the Labor Management Relations Acts.

894

If the defendants think that any of these cases which they cite demonstrate an absence of jurisdiction in the State Court, they may make the most of that contention in the State forum. But even if they succeed in persuading the State Court that it lacks jurisdiction it would not follow that this court had jurisdiction to entertain this complaint.

The defendants further point to the allegation of the complaint in Paragraph 32 that the conspiracy alleged is "in contravention of the fundamental purpose and policy of the Constitution of the United States." Plainly, that allegation, which is obviously descriptive only, is inadequate to demonstrate that the complaint rests upon the assertion of a claim or right founded on the Constitution within the meaning of the Removal Act. McCartney v. State of West Virginia, 4 Cir., 156 F.2d 739; Sandsberry v. Gulf, Colorado and Santa Fe Railway Co., D.C.M.D.Tex.1953, 114 F.Supp. 834.

■ Lastly, and generally, the defendants contend that not only is this case one arising under the laws of the United States but also that this court has original jurisdiction thereof notwithstanding the express denial of jurisdiction contained in the Norris-LaGuardia Act, 29 U.S.C.A. § 101 et seq. This latter contention, though academic if—as I hold—the case is not one arising under a federal law within the meaning of the Removal Act, is also without merit. Plainly the case here is one involving a labor dispute: indeed the defendants seem not to dispute that fact. It follows that by Section 1 of the Norris-LaGuardia Act this court is without jurisdiction unless it falls within the exceptions of the Act stated in Section 7 thereof, 29 U.S.C.A. § 107, which under prescribed conditions seems to recognize jurisdiction in the courts of the United States to grant injunctions against persons or organizations threatening or committing unlawful acts. The defendants, apparently to bring the case within these jurisdictional exceptions, call attention to allegations in the complaint, Par. 36(a) and (h), alleging disorderly conduct and breach of the peace by pickets stationed by the defendants. But,

as to this, it is enough to observe that the injunctive relief sought by the complaint is not an injunction to enjoin unlawful conduct by defendants' pickets: the relief sought is an injunction to restrain the continuance of an unlawful common law conspiracy and from the maintenance of a strike and from picketing whether disorderly or otherwise. The granting of such an injunction, under Section 1 of the Act, 29 U.S.C.A. § 101, is clearly not within the jurisdiction of the Court. It follows that on this account a claim of right to such an injunction is not one of which this Court has "original jurisdiction" within the meaning of the Removal Act. State of Minnesota v. Northern Securities Company, 194 U.S. 48, 24 S.Ct. 598, 48 L.Ed. 870. Amazon Cotton Mill Company v. Textile Workers Union, supra, also supports this point. See also the cases cited above as in line with the Amazon case. To hold that a court has original jurisdiction to entertain the case when under the Norris-LaGuardia Act it has no jurisdiction to grant the primary relief sought would be to sanction what Mr. Justice Frankfurter has aptly described, although in quite another context, as a "fox-hunting theory of justice that ought to make Bentham's skeleton rattle." Touhy v. Ragen, 340 U.S. 462, 473, 71 S.Ct. 416, 422, 95 L.Ed. 417.

Certainly the mere fact that the complaint seeks damages as well as injunctive relief does not bring the case within the Removal Act. For, as stated in the complaint the claim for damages, like the claim for injunctive relief, is one not arising under federal law. Rather it is the theory of the complaint that the acts complained of constituted a tort cognizable under State law for which resulting damages are recoverable under State law. Such a claim for damages, in the absence of diversity of citizenship, is not one of which this court has original jurisdiction. Amazon Cotton Mill Company v. Textile Workers Union, supra.

Concluding, therefore, that, notwithstanding all the contentions of the defendants, this action is not one within the purview of the Removal Act (1) because it is one not founded on federal law and (2)

because it is one of which the district courts do not have original jurisdiction, it follows that the motion to remand should be granted with such costs to the plaintiff as are provided for by 28 U.S.C.A. § 1447.

An order in accordance with the foregoing will be entered herewith.